**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **RONNIE HAGER,** | : | |
| **Plaintiff,** | : | **Case No. 2:07-cv-317** |
| **v.** | : | **Judge Holschuh** |
| **ABX AIR, INC., et al.,** | : | **Magistrate Judge Abel** |
| **Defendants.** | : | |
| | : | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Ronnie Hager ("Plaintiff"), on behalf of himself and others similarly situated, has brought this civil action against Defendants ABX Air, Inc. ("ABX"), DHL Express (USA), Inc. ("DHL"), Joe C. Hete ("Hete"), Gene Rhodes ("Rhodes"), Douglas Steele ("Steele"), Garcia Labor Company of Ohio, Inc. and Garcia Labor Company, Inc. (together, "Garcia Labor"), Maximino Garcia, Gina Luciano, and Dominga McCarroll, alleging that Plaintiff's wages have been depressed as a result of an illegal immigrant hiring scheme. Plaintiff alleges that this scheme violated the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961-1968 (2006). This matter is before the Court on the Motions to Dismiss for Failure to State a Claim Upon Which Relief can be Granted filed by ABX, Hete, Rhodes (R. at 18), Steele (R. at 19), and DHL (R. at 20) (collectively, the "Moving Defendants"). The Moving Defendants have requested oral argument, but the Court finds that oral argument is not essential to the fair resolution of this case. S. D. OH CIV. R. 7.1(b)(2). The Moving Defendants' request for oral argument is denied. For the following reasons, the Moving Defendants' Motions are **GRANTED** as to ABX and DHL, and **DENIED** as to Hete, Rhodes, and Steele.

## I.    Background[1]

Beginning in 1999, Garcia Labor, owned by Defendant Maximino Garcia, was party to a series of contracts with ABX, a cargo airline company, and DHL, ABX's parent company. (Compl. ¶¶ 5, 30, R. at 2.)  Under these contracts, Garcia Labor would provide temporary workers to ABX and DHL to sort freight at ABX's Wilmington, Ohio facility.  (Id. ¶ 30.)  The temporary workers, aliens not authorized to live or work in the United States, would fill out employment eligibility verification forms provided by Garcia Labor.  (Id. ¶ 27.)  These forms, however, contained preprinted forms of identification, such as resident alien cards and social security cards.  (Id. ¶ 34.)  These resident alien and social security cards were fraudulent, and often contained duplicate or invalid numbers.  (Id. ¶ 28.)  Despite the facts that most of these temporary workers presented fraudulent documentation, had no drivers licenses, and were unable to speak, read, or write English, under their contracts with Garcia Labor ABX and DHL would hire Garcia Labor's temporary employees so long as the employees presented some form of identification card, even if fraudulent. (Id. ¶ 31.)  Hete, ABX's President and CEO (id. ¶ 7), Rhodes, ABX's Vice-President for Human Resources (id. ¶ 8), and Steele, ABX's Human Resources Manager (id. ¶ 9), approved and implemented this policy, the "illegal immigrant hiring scheme," within ABX and DHL.  (Id. ¶ 52.) Garcia Labor received a fee for the placement of each unauthorized worker at ABX.  (Id. ¶ 51.) ABX and DHL have hired thousands of Garcia Labor employees from 1999 to 2005 in this manner. (Id. ¶ 32.)

Garcia Labor took steps to assist these unauthorized aliens to come to and reside in the

---

[1] The following factual information is taken from the Plaintiff's Complaint and is assumed to be true for the purposes of this motion.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

United States.  Garcia Labor provided rental housing in Wilmington for some of the unauthorized aliens, and helped others to find housing.  Garcia Labor also provided transportation to the ABX facility so employees could work their shifts.  Additionally, Garcia Labor employees made arrangements with a local bank to ease the unauthorized aliens' ability to cash their ABX payroll checks without proper documentation.  (Id. ¶¶ 35-38.)

The Social Security Administration first contacted Garcia Labor in 2002, when it notified Garcia Labor that the temporary workers it was supplying were using invalid social security numbers.  (Id. ¶ 39.)  In October 2002 Rhodes and Steele met with Garcia Labor representatives after learning that Garcia Labor was supplying them with unauthorized alien workers.  (Id. ¶ 40.)  At this meeting, Garcia Labor decided to continue to supply, and Rhodes, Steele, and ABX decided to continue to hire and employ, these unauthorized alien workers.  (Id.)  In May 2003 and 2004 the Social Security Administration again contacted Garcia Labor and informed it that numerous workers at the ABX facility were using invalid social security numbers, but Garcia Labor and ABX continued to supply, hire, and employ these workers.  (Id. ¶¶ 41, 43.)  Additionally, a former ABX employee directly informed Garcia Labor employees that the temporary employees it was supplying were working illegally, but Garcia Labor continued to provide such unauthorized aliens to ABX for employment.  (Id. ¶ 42.)

The Transportation Security Administration conducted an audit and inspection of ABX in early 2005, which resulted in a finding that virtually every temporary employee employed by ABX and provided by Garcia Labor was using an invalid social security number.  (Id. ¶ 44.)  These employees were subsequently terminated, and in April 2006 Steele pleaded guilty to a misdemeanor charge of hiring illegal immigrants.  (Id. ¶ 45.)  Garcia Labor also pleaded guilty to conspiracy to

encourage, induce, aid, and abet unauthorized aliens to reside or remain in the United States in October 2006.  (Id. ¶ 46.)

Plaintiff filed his Complaint on April 13, 2007.  The Moving Defendants all filed Motions to Dismiss on June 11, 2007.  (R. at 18, 19, 20.)  Plaintiff filed his Responses on July 26, 2007 (R. at 34, 35), and the Moving Defendants all submitted their Replies on August 9, 2007.  (R. at 38, 39, 40.)  The issues are now ripe for adjudication.  The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II.     Applicable Law

### A.      Standard for Granting a Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail.  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (citing Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974)).  The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  See Conley v. Gibson, 355 U.S. 41, 47 (1957); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1998).  A complaint need not set down in detail all the particularities of a plaintiff's claim.  Rule 8(a)(2) of the Federal Rules of Civil

4

Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)(emphasis in original). Bare assertions of legal conclusions are insufficient. See id.; Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993). Likewise, "a formulaic recitation of the elements of a cause of action" is not enough. Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1965 (2007). While the Supreme Court's opinion in Twombly does not require a heightened standard of pleading specific facts, it is clear that to survive a motion to dismiss a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Scheuer, 4l6 U.S. at 236; Arrow v. Federal Reserve Bank of St. Louis, 358 F.3d 392, 393 (6th Cir. 2004); Mayer, 988 F.2d at 638. The Court will indulge all reasonable inferences that might be drawn from the pleading. See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228 (6th Cir. 1997). However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000); Lewis, 135 F.3d at 405-06.

The Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. Little v. UNUM Provident Corp., 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (citing Rauch

v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

B.     The Racketeer Influenced and Corrupt Organizations Act

Although the Racketeer Influenced and Corrupt Organizations Act ("RICO") was passed as part of a larger initiative, the Organized Crime Control Act of 1970, that specifically targeted organized crime and mob activity, see U.S. v. Turkette, 452 U.S. 576, 589 n. 11 (1981), the Supreme Court has recognized that RICO reaches racketeering activity committed by legitimate businesses and organizations as well.  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 498-99 (1985) ("RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime. . . . [RICO can be] used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct").  18 U.S.C. § 1964(c) creates a civil cause of action and treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1962(c), which forms the basis for Plaintiff's claim,[2] provides that: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  To state a § 1962(c) RICO claim, then, a plaintiff must plead a person's "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, 473 U.S. at 496; Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006); see also Salinas

---

[2] Plaintiff has not explicitly stated which subsection of 1962 he believes Defendants violated.  However, Plaintiff's Complaint alleges that "the defendants, while associated with an enterprise engaged in interstate commerce, participated in the conduct of the enterprise's affairs through a pattern of racketeering activity."  (Compl. ¶ 49, R. at 2.)  This alleges a violation of 18 U.S.C. § 1962(c).

v. U.S., 522 U.S. 52, 62 (1997).[3]

"Conduct" refers to a defendant's conduct of or participation in the alleged enterprise's affairs. The words "conduct or participate" imply a degree of direction, and mean that the defendant must have "*some* part in directing the enterprise's affairs[.]" Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). This is commonly referred to as the "operation or management" test. Id.; Stone v. Kirk, 8 F.3d 1079, 1092 (6th Cir. 1993) ("[A]lthough 'RICO liability is not limited to those with primary responsibility for the enterprise's affairs' . . . one cannot be liable under § 1962(c) unless one has participated, in some degree, 'in the operation or management of the enterprise itself.'" (quoting Reves, 507 U.S. at 179)).

Section 1961(4) defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court defines an enterprise as a "group of persons associated together for a common purpose of engaging in a course of conduct." Turkette,

---

[3] The Moving Defendants direct the Court to a somewhat different test for stating a § 1962(c) RICO claim, found in VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000) and Frank v. D'Ambrosi, 4 F.3d 1378, 1385 (6th Cir. 1993). VanDenBroeck and Frank stated that a plaintiff must show "1) that there were two or more predicate offenses; 2) that an 'enterprise' existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." VanDenBroeck, 210 F.3d at 699; Frank, 4 F.3d at 1385. Neither of those cases cited Sedima. VanDenBroeck cited Frank, which in turn cited Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 274 n.5 (9th Cir. 1988), a Ninth Circuit case that similarly did not cite Sedima and merely recited the above elements in dicta. Neither VanDenBroeck nor Frank has been overruled, and the Moon court did not cite either of them, but did cite Sedima. One unpublished Sixth Circuit decision, Royal Oak Entertainment, LLC v. City of Royal Oak, MI, 205 F. App'x 389, 399 (6th Cir. Nov. 9, 2006) did state the VanDenBroeck elements and cited Sedima, but that decision granted the defendants summary judgment without a discussion of the elements. In light of this confusion, this Court is obligated to follow the Supreme Court's clear articulation of the elements of a § 1962(c) RICO claim in Sedima.

452 U.S. at 583. Proving the existence of a "legal entity" enterprise, such as a partnership or corporation, is relatively straightforward. Proving the existence of a "non-legal entity", "association in fact" enterprise, however, is more difficult. "An association in fact enterprise can be proven by showing 1) that the associated persons formed an ongoing organization, formal or informal; 2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern of racketeering activity in which it engaged." VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000). These elements "require a certain amount of organizational structure which eliminates simple conspiracy from [RICO's] reach. . . . [T]he parties [must be] organized in a fashion that would enable them to function as a racketeering organization for other purposes. . . . All that is required is some minimal level of organizational structure between the entities involved." Id.

A "pattern of racketeering activity" is defined by statute as "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" is further defined in 18 U.S.C. § 1961(1) as any one of a numerous list of state and federal offenses that qualify as racketeering activity. A pattern of racketeering activity "is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise." Turkette, 452 U.S. at 583. 18 U.S.C. § 1961(5) requires at least two racketeering acts.[4] While proof of the enterprise and pattern of racketeering activity elements may at times overlap, the Supreme Court has made it clear that these are separate elements. "[P]roof of these separate elements [need not always] be distinct and independent, [but]

---

[4] This minimum number of acts may not always be sufficient to establish a pattern of racketeering activity, because the predicate acts must be related and must pose a threat of continued criminal activity. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). The Moving Defendants have not raised this issue, however, and the Court expresses no opinion on it.

8

the proof offered [must be] sufficient to satisfy both elements." U.S. v. Johnson, 440 F.3d 832, 840

(6th Cir. 2006) (quoting U.S. v. Quaod, 777 F.2d 1105, 1115 (6th Cir. 1985)).

## III.    Analysis

Plaintiff alleges that the Defendants in this case were part of and participated in the conduct

of a RICO enterprise whose function was to supply unauthorized aliens for employment at ABX and

DHL.   Plaintiff alleges that the Defendants committed hundreds of racketeering acts, such as

encouraging numerous aliens to come to the United States, harboring them while present, and

knowingly hiring illegal aliens, in addition to aiding an abetting in the commission of and conspiring

to commit these acts.  (Compl. ¶ 49, R. at 2.)  Plaintiff alleges that these acts harmed him because

his wages were depressed by the presence of unauthorized aliens who would work for less than

prevailing wages.  The Moving Defendants argue[5] that Plaintiff's Complaint should be dismissed

because it does not sufficiently allege any RICO racketeering acts, does not sufficiently allege the

existence of a RICO enterprise, and does not sufficiently allege that the Moving Defendants

participated in the conduct of a RICO enterprise.  (ABX Mot. Dismiss p. 1, R. at 18.)

Before turning to an analysis of the Moving Defendants' arguments, the Court notes that

Plaintiff's use of RICO is a novel one.  The parties have only been able to identify eight other

relevant decisions addressing the same or a similar legal theory[6]: Williams v. Mohawk Industries,

---

[5] Although Steele and DHL have submitted separate Motions to Dismiss, both state that
ABX's arguments are wholly applicable to Steele and DHL, and rely on ABX's Motion.  (DHL
Mot. Dismiss p. 2, R. at 20; Steele Reply p. 1, R. at 39.)  Therefore, for clarity's sake, the Court
will only refer to ABX's Motion to Dismiss.

[6] The Sixth, Ninth and Second Circuits have issued decisions in RICO cases based on
immigration offenses.  See Trollinger v. Tyson Foods, Inc., 370 F.3d 602 (6th Cir. 2004);
Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir. 2002); Commercial Cleaning Services,
L.L.C. v. Colin Service Systems, Inc., 271 F.3d 374 (2d Cir. 2001).  These opinions, however,

Inc., 465 F.Supp.2d 1277 (11th Cir. 2006) (affirming in relevant part 314 F.Supp.2d 1333 (N.D. Ga. 2004)); Baker v. IBP, Inc., 357 F.3d 685 (7th Cir. 2004); Hernandez v. Balakian, 480 F.Supp.2d 1198 (E.D. Cal. 2007); Zavala v. Wal-Mart Stores, Inc., 393 F.Supp.2d 295 (D. N.J. 2005); System Management, Inc. v. Loiselle, 91 F.Supp.2d 401 (D. Mass. 2000); Trollinger v. Tyson Foods, Inc., No. 4:02-CV-23, 2007 WL 1574275 (E.D. Tenn. May 29, 2007) (denial of motion to dismiss) (Trollinger I) and 2008 WL 413635 (E.D. Tenn. Feb. 13, 2008) (grant of summary judgment) (Trollinger II); and Brewer v. Salyer, No. CV F 06-01324, 2007 WL 1454276 (E.D. Cal. May 17, 2007). Additionally, the Court has discovered another relevant opinion, Cunningham v. Offshore Specialty Fabrications, Inc., No. 5:04-cv-282, 2008 WL 276403 (E.D. Tex Jan. 30, 2008). The decisions listed above disagree on many of the issues involved, and the Sixth Circuit has not addressed many of these same issues. As a result, there is little authoritative law governing the issues presented by the Moving Defendants. With that in mind, the Court turns to its analysis of the Moving Defendants' Motions.

### A. The RICO Racketeering Acts

Plaintiff relies on 18 U.S.C. § 1961(1)(F), codified at 8 U.S.C. § 1324, which makes "any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens)" a racketeering act for RICO purposes. Plaintiff alleges five separate types of racketeering acts: (1) concealing, harboring, or shielding aliens, in violation of § 1324(a)(1)(A)(iii); (2) encouraging or inducing aliens to come to or reside in the United States, in violation of § 1324(a)(1)(A)(iv); (3) conspiring to conceal, harbor, or shield, or conspiring to

---

discuss issues of RICO standing and proximate causation, which are not at issue for the purposes of these Motions because the Moving Defendants have not raised them. Therefore, these opinions do not provide any guidance on the questions currently at issue.

encourage or induce, in violation of § 1324(a)(1)(A)(v)(I); (4) aiding or abetting another in concealing, harboring, or shielding, or encouraging or inducing, in violation of § 1324(a)(1)(A)(v)(II); and (5) hiring 10 or more individuals with actual knowledge that they are aliens, in violation of § 1324(a)(3). The Court will address these allegations in turn.

### 1. Concealing, Harboring, or Shielding Aliens

8 U.S.C. § 1324(a)(1)(A)(iii) makes it a criminal offense for any person,

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, [to] conceal[], harbor[], or shield[] from detection, or [to] attempt[] to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation . . . .

The statute does not define the terms "conceal," "harbor," or "shield," and thus the Court must construe these terms in accordance with their ordinary or natural meanings. See F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994). The statute does state that the person must conceal, harbor, or shield the alien "from detection," which implies an element of secrecy. This conclusion is reinforced by a Sixth Circuit case from 1928 interpreting a predecessor statute to the current § 1324(a)(1)(A)(iii). The Sixth Circuit stated that "the natural meaning of the word 'harbor' [is] to clandestinely shelter, succor, and protect improperly admitted aliens, and that the word 'conceal' should be taken in the simple sense of shielding from observation and preventing discovery of such alien persons." Susnjar v. United States, 27 F.2d 223, 224 (6th Cir. 1928).

Although Plaintiff argues that "the continuing authority of Susnjar is 'questionable,' given the subsequent amendments to the immigration statutes[]" (Pl. Resp. p. 7 n. 5, R. at 35), the Sixth Circuit has not overruled Susnjar and this Court is obligated to follow it. See Trollinger I, 2007 WL 1574275 at *8 (accepting and applying Susjnar's definitions to a RICO claim brought on the basis of a violation of § 1324(a)(1)(A)(iii)); United States v. Belevin-Ramales, 458 F.Supp.2d 409, 411

11

(E.D. Ky. 2006) (considering and rejecting an argument that <u>Susnjar</u> has been abrogated or implicitly overruled and using the <u>Susnjar</u> definition in jury instructions).  While <u>Susnjar</u> did not define "shield," the principle of *noscitur a sociis*, the idea that "a word is known by the company it keeps," <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 575 (1995), tells the Court that this term should be given a meaning similar to "conceal" and "harbor."  <u>See</u> <u>S.D. Warren Co. v. Maine Bd. of Environmental Protection</u>, 547 U.S. 370, 378 (2006) (stating that *noscitur a sociis* is properly "invoked when a string of statutory terms raises the implication that the words grouped in a list should be given related meaning" (internal quotation omitted)).

The different courts that have addressed RICO claims based on violations of § 1324(a)(1)(A)(iii) have uniformly held that merely knowingly hiring and employing an illegal alien does not constitute concealing, harboring, or shielding that alien from detection.  Some manner of affirmative conduct, such as providing housing or informing aliens of impending government raids, is required to constitute a violation of § 1324(a)(1)(A)(iii).  <u>Compare</u> <u>Hernandez</u>, 480 F.Supp.2d at 1211 (Plaintiffs alleged a concealing, harboring, or shielding violation when the complaint stated that the defendants ordered its hiring personnel to obtain housing for aliens) <u>and</u> <u>Trollinger I</u>, 2007 WL 1574276 at *8 (Complaint alleged that defendant provided housing for aliens and tipped workers off to impending raids, and thus stated a concealing, harboring, or shielding violation) <u>with</u> <u>Zavala</u>, 393 F.Supp.2d at 307 (Allegations of employment alone do not constitute a concealing, harboring, or shielding violation) <u>and</u> <u>Brewer</u>, 2007 WL 1454276 (same).

With these principles in mind, the allegations in Plaintiff's Complaint do not adequately plead a violation of § 1324(a)(1)(A)(iii).  Plaintiff has adequately alleged that the Moving Defendants knew that the workers they hired and employed were unauthorized aliens, but has not

alleged any conduct on the part of the Moving Defendants that would establish that the Moving Defendants concealed, harbored, or shielded those aliens from detection.  Plaintiff has alleged that Garcia Labor provided transportation, housing, and other assistance to the aliens (Compl. ¶¶ 35-38), but nowhere does Plaintiff allege that the Moving Defendants did anything more than knowingly hire and employ unauthorized aliens.  Plaintiff argues that the Moving Defendants' practice of hiring and employing these aliens gave "assurance to the aliens that ABX's . . . facility was a haven where their unlawful employment would continue undisturbed," and constitutes harboring or "succoring" the aliens.  (Pl. Resp. p. 7, R. at 35.)  Plaintiff's argument, however, is not supported by law.  There are no allegations that the Moving Defendants themselves provided housing or other shelter to the unauthorized aliens, and no allegations that the Moving Defendants took any steps to shield the aliens from detection, as is required.   Plaintiff has not adequately pled a violation of § 1324(a)(1)(A)(iii) by the Moving Defendants.

## 2.    Encouraging or Inducing Aliens

8 U.S.C. § 1324(a)(1)(A)(iv) prohibits "encourag[ing] or induc[ing] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law[.]"  "Various acts may amount to encouraging," Zavala, 393 F.Supp.2d at 308, but at a minimum the defendant must take some affirmative act to assist an alien to enter or remain in the United States in order to violate § 1324(a)(1)(A)(iv).  Id.  Providing false passports to aliens and helping them board planes headed to the United States constitutes encouraging, see, e.g., United States v. Yoshida, 303 F.3d 1145, 1150-51 (9th Cir. 2002); United States v.Fujii, 301 F.3d 535, 540 (7th Cir. 2002), as does providing false identification papers to aliens already in the United States.  United States v. Oloyede, 982 F.2d

13

133, 137 (4th Cir. 1992).

Plaintiff and the Moving Defendants argue over whether employment can constitute encouraging or inducing an alien to remain in the United States. (ABX Mot. Dismiss p. 13, R. at 18; Pl. Resp. p. 11-12, R. at 35.) Despite Plaintiff's assertion that employment is within the ambit of encouraging, a review of relevant case law reveals that Plaintiff has not adequately pled a violation of § 1324(a)(1)(A)(iv) against the Moving Defendants. Plaintiff rely on Oloyede. In Oloyede and a factually similar case, United States v. Ndiaye, 434 F.3d 1270, 1297-98 (11th Cir. 2006), the defendants provided fraudulent employment, social security, and citizenship application documents to aliens unauthorized to reside in the United States. See Oloyede, 982 F.2d at 135; Ndiaye, 434 F.3d at 1277-78. Both the Oloyede and Ndiaye courts affirmed the defendants' convictions, because their acts enabled the aliens to whom they provided the false documents to obtain work and remain in the United States. Oloyede, 982 F.2d at 137; Ndiaye, 434 F.3d at 1298. Oloyede and Ndiaye thus support the proposition that an individual who provides fraudulent documents that enable an alien to obtain work is guilty of encouraging or inducing an alien to remain in the United States. Oloyede and Ndiaye do not, however, say anything about the actual *employer's* liability for encouraging or inducing under § 1324(a)(1)(A)(iv). In this case, Plaintiff alleges that Garcia Labor is the one that provided the fraudulent resident alien and social security cards and other forms to the aliens. (Compl. ¶ 34.) Garcia Labor is the party most analogous to the defendants in Oloyede and Ndiaye, not any of the Moving Defendants. There are no allegations in Plaintiff's Complaint that the Moving Defendants ever provided false identification documents to unauthorized aliens, which distinguishes the Moving Defendants from the defendants in Oloyede and Ndiaye.

The facts of this case are most similar to the facts in Zavala. There, in pertinent part,

14

plaintiffs alleged that various recruiters and contractors encouraged aliens to enter the United States to work for defendant Wal-Mart, and stated that Wal-Mart was guilty of encouraging aliens to come to or reside in the United States.  Zavala, 393 F.Supp.2d at 308.  In rejecting the plaintiffs' § 1324(a)(1)(A)(iv) claim, the Zavala court stated that: "These allegations implicate a particular Wal-Mart contractor, but do not state a claim against Wal-Mart for encouraging . . . .  As alleged, Wal-Mart hired undocumented workers . . . but the complaint fails to allege, as it must, that Wal-Mart took affirmative steps to assist [aliens] to enter or remain unlawfully in the United States . . . ."  Id.  Plaintiff states that Zavala is distinguishable because the Zavala plaintiffs "had asserted an 'encouraging' claim against only the contractors who supplied the workers to Wal-Mart, not against Wal-Mart itself."  (Pl. Resp. p 12, R. at 35.)  This is incorrect, however, because the Zavala opinion makes it clear that the plaintiffs brought their encouraging claim directly against Wal-Mart.  Zavala, 393 F.Supp.2d at 304.

In the instant case, the Moving Defendants are analogous to defendant Wal-Mart in Zavala.  While Plaintiff has adequately alleged that the Moving Defendants knowingly hired unauthorized aliens, Plaintiff has not alleged any affirmative conduct on behalf of the Moving Defendants that could constitute encouraging or inducing.  Plaintiff's allegations concerning encouraging are against Garcia Labor, not the Moving Defendants.  Plaintiff has not adequately pled a violation of § 1324(a)(1)(A)(iv) against the Moving Defendants.

### 3. Conspiring to Conceal, Harbor, or Shield Aliens, or to Encourage or Induce Aliens

8 U.S.C. § 1324(a)(1)(A)(v)(I) criminalizes "engag[ing] in any conspiracy to commit any of the preceding acts," which includes the acts of concealing, harboring, or shielding an alien and encouraging or inducing an alien to come to or reside in the United States.  The elements of a

conspiracy are: "(1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." United States v. Hughes, 505 F.3d 578, 593 (6th Cir. 2007). "The essence of a conspiracy is the agreement to commit the offense and not the commission of the substantive offense." Id. at 588. There need not be a formal agreement, as "[a] tacit or material understanding among the parties to a conspiracy is sufficient to establish the agreement." United States v. Walls, 293 F.3d 959, 967 (6th Cir. 2002). Once the conspiracy is established a defendant's connection to it need only be slight, but "mere association with conspirators is not enough to establish participation in a conspiracy." United States v. Pearce, 912 F.2d 159, 162 (6th Cir. 1980). All the elements of a conspiracy charge may be proven by circumstantial evidence, and can "be inferred from acts done with a common purpose." United States v. Searan, 259 F.3d 434, 442 (6th Cir. 2001).

The Moving Defendants briefly state that Plaintiff's allegations are "insufficient to describe a RICO predicate offense of . . . conspiring to harbor[,]" but do not give any support for this conclusion and do not address Plaintiff's claim for conspiracy to encourage. (ABX Mot. Dismiss p. 12, R. at 18.) Plaintiff does not address his conspiracy claims at all in his Response. The parties' lack of attention to these independent, separate potential RICO racketeering acts notwithstanding, the Court concludes that Plaintiff's Complaint does not adequately allege that the Moving Defendants conspired to conceal, harbor, or shield aliens, or to encourage or induce aliens to enter or reside in the United States.

Plaintiff alleges that the Moving Defendants agreed to employ unauthorized aliens in furtherance of an illegal scheme to encourage and induce aliens to enter into and remain in the United States. (Compl. ¶ 27.) Plaintiff alleges that Garcia Labor in fact provided the aliens, and that

16

the Moving Defendants actually employed them pursuant to contracts between Garcia Labor and the Moving Defendants.  (Id. ¶¶ 30, 32.)  Furthermore, Plaintiff alleges that in October 2002 ABX and Garcia Labor representatives met and, despite the fact that all parties knew that Garcia Labor was providing ABX with unauthorized aliens, ABX and Garcia Labor "decided to continue to employ and assign such alien workers to work at ABX."  (Id. ¶ 40.)  The facts that Plaintiff has alleged do not make a claim of conspiracy plausible on its face.  See Twombly, 127 S. Ct. at 1974.  Knowledge that Garcia Labor was committing a criminal act does not, by itself, make the Moving Defendants liable under a conspiracy theory, because "mere association with conspirators is not enough to establish participation in a conspiracy."  Pearce, 912 F.2d at 162.  Plaintiff has not alleged any facts that would support an inference that the Moving Defendants *agreed* with Garcia Labor to violate the law, as opposed to merely knowing that Garcia Labor was violating the law, and "[t]he essence of a conspiracy is the agreement to commit the offense . . . ."  Hughes, 505 F.3d at 588.  Plaintiff has not adequately pled a violation of § 1324(a)(1)(A)(v)(I) against the Moving Defendants.

### 4. Aiding or Abetting Concealing, Harboring, or Shielding Aliens, or Encouraging or Inducing Aliens

8 U.S.C. § 1324(a)(1)(A)(v)(II) prohibits "aid[ing] or abet[ting] the commission of any of the preceding acts[,]" which includes concealing, harboring, or shielding an alien and encouraging or inducing an alien to come to or reside in the United States.  "To aid or abet another to commit a crime, a defendant must in some way associate himself with the venture such that his participation is intended to bring about the crime or make it succeed."  United States v. Blood, 435 F.3d 612, 623 (6th Cir. 2006).  The essential elements of aiding and abetting are: "(1) an act by a defendant that contributes to the commission of a crime; and (2) the intent to aid in the commission of the crime."  United States v. Gardner, 488 F.3d 700, 714 (6th Cir. 2007).  Knowledge that a crime is being

17

committed is insufficient to support an aiding and abetting charge, see United States v. Smith, 20 F.App'x 258, 266 (6th Cir. 2001); rather, there must be actual affirmative conduct in support of the commission of a crime.  The defendant must also have the same mental state as the principal. Searan, 259 F.3d at 444.

The Moving Defendants argue that Plaintiff has not alleged any acts of affirmative support that would support any aiding and abetting charges.  (ABX Mot. Dismiss p. 12, R. at 18; ABX Reply p. 11, R. at 38.)  Plaintiff has not addressed the Moving Defendants' arguments in regards to aiding or abetting concealing, harboring, or shielding aliens, but does argue that the allegations in the Complaint state a claim for aiding or abetting another to encourage or induce aliens to come to or reside in the United States.  (Pl. Resp. p. 12-13, R. at 35.)  Plaintiff argues that the Moving Defendants act of procuring the unauthorized aliens' employment constitutes an act that contributed to the commission of the crime of encouraging or inducing an alien to enter or remain in the United States, and then simply states that the Moving Defendants "clearly" shared the same criminal intent. (Id.)

The allegations in the Complaint, however, are insufficient to state a claim of aiding or abetting against the Moving Defendants.  Plaintiff has not alleged any affirmative acts on the part of the Moving Defendants that would contribute to the commission of a violation of either § 1324(a)(1)(A)(iii) or (iv) by another.  The Moving Defendants' acts of hiring and employing unauthorized aliens cannot constitute such acts.  Employing the aliens did not help anyone clandestinely conceal, harbor, or shield the aliens from detection, because employment has nothing to do with providing housing for such aliens or preventing their detection.  In fact, by employing the aliens, the Moving Defendants may have undermined any attempt to prevent detection of the aliens

18

by increasing their exposure to government agency inspection.  There are no other allegations in the Complaint that the Moving Defendants did anything to conceal, harbor, or shield aliens from detection.  Likewise, employing these unauthorized aliens did not aid or abet another in encouraging or inducing the aliens to remain in the United States.  That crime, as described above in section III.A.2, was completed when the unauthorized aliens received fraudulent identification documents from Garcia Labor.  There are no allegations that the Moving Defendants helped Garcia Labor to procure these documents, and the employment occurred after the fact.  The Complaint does not state a claim for aiding or abetting against the Moving Defendants.

### 5.    Hiring 10 or More Aliens

8 U.S.C. § 1324(a)(3) states:

(A)    Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B) shall be fined . . . .

(B)    An alien described in this subparagraph is an alien who --

(i)    is an unauthorized alien (as defined in section 1324a(h)(3) of this title), and

(ii)    has been brought into the United States in violation of this subsection.

8 U.S.C. § 1324a(h)(3) states that "unauthorized alien" "means, with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General."

The Moving Defendants first argue that Plaintiff's allegations of knowingly hiring

unauthorized aliens can only constitute a violation of § 1324**a**,[7] entitled "Unlawful employment of

aliens."   Section 1324**a** is not defined as "racketeering activity" by RICO, and so the Moving

Defendants argue that Plaintiff's hiring or employing aliens claim must fail as a matter of law.

(ABX Mot. Dismiss p. 7-8, R. at 18; ABX Reply p. 2-6, R. at 38.)  This argument, however, is not

well founded.  "[T]he fact that Congress has enacted two sections encompassing similar conduct but

prescribing different penalties does not compel a conclusion that one statute was meant to limit,

repeal, or affect enforcement of the other."  Brewer, 2007 WL 1454276 at *5 (quoting United States

v. Kim, 193 F.3d 567, 573 (2d Cir. 1999)).  "[T]he same facts may establish more than one violation

of the law[,]" Hernandez, 480 F.Supp.2d at 1206, and the Court must evaluate Plaintiff's Complaint

to determine if it adequately alleges a violation of § 1324(a)(3).

The proper interpretation of § 1324(a)(3) has been the subject of debate, principally due to

the reference to "this subsection" in clause (ii) of subparagraph (B).  The Moving Defendants argue

that, to adequately plead a violation of § 1324(a)(3), a plaintiff must "allege that the defendant knew

not only that its employees were 'unlawfully present in the United States,' but also 'how the aliens

had been brought into the United States and that they were brought into the United States in

violation of [8 U.S.C. § 1324(a)(3)]."  (ABX Mot. Dismiss p. 8, R. at 18.)  Defendant relies on

Loiselle, 91 F.Supp.2d at 408, for this proposition.  Plaintiff argues that there is no requirement that

the Complaint allege that the Moving Defendants knew how the aliens were brought into the United

States.  (Pl. Resp. p. 8, R. at 35.)

Loiselle was the first court to interpret § 1324(a)(3) when used as a predicate offense for a

RICO claim.  The Loiselle court stated that this provision is "difficult to interpret," because that

_____

[7] 8 U.S.C. § 1324**a** is a separate statutory section from 8 U.S.C. § 1324.

court interpreted the reference to "this subsection" to refer back to § 1324(a)(3). Loiselle, 91
F.Supp.2d at 408. This "reference back" to an anti-employment provision led the Loiselle court to
conclude: "[T]o state a civil RICO claim on the basis of a violation of this subsection of Title 8, [the
plaintiff] must allege that [the defendant] had knowledge of how the aliens had been brought into
the United States and that they were *brought* into the United States in violation of this employment
provision" for the purpose of illegal employment. Id. (emphasis in original). The Loiselle court
dismissed the plaintiff's claimed violation of § 1324(a)(3) because the complaint did not allege any
facts showing how the aliens entered the country, or whether the defendant knew the purpose for
which they entered. Id. Other courts have agreed with Loiselle's interpretation of § 1324(a)(3),
particularly the requirement that the defendant know that the aliens were brought into the country
for the purpose of illegal employment. See Zavala, 393 F.Supp.2d at 309; Trollinger I, 2007 WL
1574276 at ** 6-7; Cunningham, 2008 WL 276403 at **12-13; Trollinger II, 2008 WL 413635 at
*2 n. 2.

This Court, however, believes that Loiselle's interpretation of § 1324(a)(3) was erroneous.
Loiselle interpreted the phrase "this subsection" to refer to § 1324(a)(3). Properly labeled, however,
§ 1324(a)(3) is a *paragraph*, not a *subsection*. "Congress ordinarily adheres to a hierarchical
scheme in subdividing statutory sections[,]" Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50,
60 (2004), and § 1324 is no exception. House of Representatives and Senate drafting manuals state
that sections should be divided first into subsections beginning with (a), then paragraphs beginning
with (1), then subparagraphs beginning with (A), and finally clauses beginning with (i). Id. at 60-61.
Thus, § 1324(a)(3)(B)(ii)'s reference to "this subsection" refers to subsection (a) of § 1324
generally, not to paragraph (3) of subsection (a) of § 1324, as the Loiselle court held. Subsection

(a) establishes many different violations, not all of which relate to employment.  Clauses (iii) and (iv) of § 1324(a)(1)(A), as described above, state that concealing, harboring, or shielding aliens from detection, and encouraging or inducing aliens to come to or reside in the United States, are violations of subsection (a).  Neither of these violations encompasses employment, and to state a violation of these clauses, the statute does not say that the aliens have to be brought to the United States for the purpose of illegal employment.  The <u>Loiselle</u> court's holding that § 1324(a)(3) is not violated unless the defendant knows that the aliens it employs were brought into the country for the purpose of illegal employment finds no support in the text of the statute, once properly interpreted.  Other courts, while not explicitly relying on this Court's reasoning, agree with this Court's interpretation of § 1324(a)(3).  <u>See</u> <u>Williams</u>, 314 F.Supp.2d at 1345-46 (interpreting "this subsection" to refer to § 1324(a) without extended discussion); <u>Hernandez</u>, 480 F.Supp.2d at 1206 (<u>citing</u> <u>Williams</u>); <u>Brewer</u>, 2007 WL 1454276 at ** 6-7 (same).

To properly state a violation of § 1324(a)(3), then, a plaintiff must allege that the defendant (1) had actual knowledge that the aliens it employed were unauthorized aliens (as defined by § 1324a(h)(3)); and (2) had actual knowledge that the aliens had been brought into the United States in violation of one of the provisions of § 1324(a).  Evaluating the allegations in Plaintiff's Complaint, the Court determines that Plaintiff has alleged sufficient facts to support an allegation that the Moving Defendants violated § 1324(a)(3).  The Complaint clearly states facts sufficient to allege that the Moving Defendants hired 10 or more aliens for multiple 12 month periods, and knew that the aliens they hired and employed were unauthorized aliens as defined by § 1324a(h)(3).  Plaintiff alleges that the Moving Defendants "receiv[ed] information that Garcia Labor was supplying workers who were not legally permitted to work in the United States" at some time prior

to October 2002, (Compl. ¶ 40), and following a government investigation, Steele pleaded guilty to a misdemeanor charge of hiring illegal immigrants while knowing they were unauthorized to work in the United States.  (Pl. Resp. p. 3, R. at 35.)

As for the Moving Defendants' actual knowlege of a violation of subsection (a), Plaintiff has alleged numerous facts relating to Garcia Labor's acts of encouraging or inducing aliens to come to or reside in the United States, such as supplying fraudulent identification documents.  (Id. ¶ 34.) This would be a violation of § 1324(a)(1)(A)(iv).  The Complaint further alleges that, after learning that Garcia Labor was supplying unauthorized aliens at the October 2002 meeting, the Moving Defendants decided to continue to hire and employ these unauthorized workers provided by Garcia Labor.  (Id. ¶ 34.)  It is a reasonable factual inference to infer that, at this October 2002 meeting, the Moving Defendants learned that Garcia Labor was bringing these unauthorized workers to the United States by encouraging or inducing them with fraudulent identification documents.  See Saglioccolo, 112 F.3d at 228 (courts may indulge all reasonable inferences that might be drawn from the pleading).  Thus, after the October 2002 meeting, Plaintiff's Complaint alleges that the Moving Defendants continued to hire aliens that they knew to be unauthorized aliens, and that they knew were brought into the United States by Garcia Labor in violation of § 1324(a)(1)(A)(iv).  Plaintiff's Complaint adequately alleges multiple violations of § 1324(a)(3), moreover, because Plaintiff alleges that the Moving Defendants hired 10 or more illegal aliens for each 12 year period from 2002 to 2005.

## B.    The RICO Enterprises

Plaintiff has adequately pled that the Moving Defendants committed two or more racketeering acts, i.e. two or more violations of § 1324(a)(3), hiring 10 or more illegal aliens with

actual knowledge that the aliens are illegal, and the Court must now turn to an examination of whether Plaintiff has pled the existence of a RICO enterprise.  Plaintiff has alleged the existence of two distinct RICO enterprises that are at issue here: (1) an association-in-fact enterprise between ABX, DHL, and Garcia Labor; and (2) an association-in-fact enterprise between Hete, Rhodes, Steele, and ABX and DHL.  (Compl. ¶¶ 51, 52.)  The Court will address each of these enterprises in turn.

### 1.    The ABX, DHL, and Garcia Labor Enterprise

Plaintiff alleges that

> ABX and DHL formed an ongoing association-in-fact [enterprise] with Garcia Labor for the purpose of supplying hourly paid workers to their Ohio facility.  Pursuant to this scheme, ABX and DHL knew that most of the workers supplied by Garcia labor would be unauthorized aliens.  At all relevant times, ABX's and DHL's management knew that the workers supplied by Garcia Labor were driving down wages of legitimate workers at the Wilmington facility below what ABX and DHL would or could have paid the legitimate workers without this scheme.  Garcia Labor, in turn, received fees from ABX and DHL for the placement of each unauthorized worker.  Thus, ABX, DHL, and Garcia Labor participated in the affairs of this association-in-fact [enterprise] through a pattern o[f] racketeering activity and associated together [for] the common purpose of procuring unauthorized aliens to work at the Wilmington facility.

(Compl. ¶ 51.)  As noted above, to establish the existence of an association-in-fact RICO enterprise, Plaintiff must plead facts that show: "1) that the associated persons formed an ongoing organization, formal or informal; 2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern of racketeering activity in which it engaged."  VanDenBroeck, 210 F.3d at 699.  These elements imply a degree of hierarchical organization or structure that distinguishes a RICO enterprise from a simple conspiracy.  Id.  Additionally, if Plaintiff pleads the existence of an enterprise, Plaintiff must also plead facts showing that ABX and DHL conducted or participated in conducting some part of the enterprise's affairs by directing some part of the enterprise's

operation or management.  Reves, 507 U.S. at 179.

Courts ruling on these types of immigration-based RICO claims have generally found that an enterprise existed between an employer and a worker recruiting organization when the plaintiff alleges a fairly significant degree of employer involvement in and control of the recruiting organization.  In Williams, the Eleventh Circuit found that an enterprise existed between the defendant employer and recruiting agencies when the plaintiff had alleged that the defendant and the recruiting agencies had established a formal organization to maintain a pool of unauthorized workers that the defendant could hire at short notice to meet its employment needs.  Williams, 465 F.3d at 1284.  The plaintiff alleged that the defendant's legitimate employees, who carried supplies of fraudulent social security cards, physically traveled to the Mexican border with the recruiting organizations and helped the recruiters to gather aliens.  Id.  Additionally, the defendant paid incentives to its employees and the recruiting organizations for finding unauthorized aliens to work for defendant.  Id.  Likewise, in Trollinger I the Eastern District of Tennessee found that an enterprise existed between the defendant employer and the recruiting organizations when the defendant closely supervised the recruiting organizations' operations, the recruiting organizations actually opened offices inside of the defendant's facilities to facilitate the hiring process, and the defendant paid each recruiting organization a fee for workers supplied.  Trollinger I, 2007 WL 1574275 at *10.

The Court finds that Plaintiff's allegations do not adequately allege the existence of an enterprise between ABX, DHL, and Garcia Labor.  While ABX, DHL, and Garcia Labor did enter into multiple worker provision contracts that existed for six years (Compl. ¶ 30), which would support an inference of an ongoing organization, and the pattern of racketeering activity existed over

25

a long period of time as well, there are insufficient facts to support an inference that ABX, DHL, and Garcia Labor organized or structured their relationship in such a way that would transform this association into a RICO enterprise.  Plaintiff argues that he only needs to plead the existence of a consensual organizational structure, "such as one based on contract" (Pl. Resp. p. 17, R. at 35), rather than a hierarchical structure and cites a Seventh Circuit case, Richmond v. Nationwide Cassel L.P., 52 F.3d 640 (7th Cir. 1995).  In Richmond, the Seventh Circuit stated that: "A RICO enterprise is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making."  Id. at 644 (internal quotation omitted).  Richmond's reference to "hierarchical" decision-making somewhat undermines Plaintiff's argument, but regardless of the Seventh Circuit's RICO enterprise requirements, the Sixth Circuit requires "evidence of some sort of 'chain of command' or other evidence of a hierarchy, even a highly limited one."  VanDenBroeck, 210 F.3d at 700; see also Walker v. Jackson Public Schools, 42 F.App'x 735, 737 (6th Cir. 2002).

Plaintiff has not alleged any facts that would support an inference of any hierarchical organization between ABX, DHL, and Garcia Labor.  Plaintiff merely alleges that ABX, DHL, and Garcia Labor all conducted the illegal immigrant hiring scheme over a period of time pursuant to a series of contracts, under which Garcia Labor received a fee.  The Court has already determined that these allegations are not enough to plead even the existence of a conspiracy between ABX, DHL, and Garcia Labor in section III.A.3 supra.  Even if they did plead a conspiracy, however, RICO's enterprise requirement imposes additional hurdles for a plaintiff to overcome in order to separate conspiracies from RICO enterprises.  VanDenBroeck, 210 F.3d at 699.  Unlike in Williams and Trollinger I, there are no allegations that ABX or DHL supervised or directed Garcia Labor's

26

operations, or that ABX or DHL employees assisted Garcia Labor by traveling to the Mexican border to recruit aliens or by supplying social security cards. Plaintiff has alleged that ABX and DHL paid fees to Garcia Labor, but this was done pursuant to the contract that existed between them and does not support a reasonable inference of an ongoing hierarchical structure. The facts that Plaintiff has alleged do not support the conclusion that ABX, DHL, and Garcia Labor functioned as a continuing unit or organization that was separate from the racketeering acts they allegedly committed. See VanDenBroeck, 210 F.3d at 699.

Similarly, there are no factual allegations would satisfy Reves' operation or management test. To satisfy this test, Plaintiff would have to allege facts supporting a conclusion that ABX and DHL had some part in directing this hypothetical enterprise's affairs, not merely that ABX and DHL acquiesced to or went along with the enterprise. See Reves, 507 U.S. at 179. There are no allegations that ABX and DHL exercised any control over or directed Garcia Labor's conduct, or determined the direction of the hypothetical enterprise. The Complaint does not even allege that ABX and DHL agreed to participate in alleged racketeering acts, see section III.A.3 *supra*, much less that ABX and DHL controlled the operation of the hypothetical enterprise that committed the racketeering acts. Plaintiff's Complaint does not present a claim, plausible on its face, see Twombly, 127 S. Ct. at 1974, that ABX, DHL, and Garcia Labor constituted a "group of persons associated together for a common purpose of engaging in a course of conduct," Turkette, 452 U.S. at 583, and thus does not adequately allege the existence of an enterprise.

### 2. The Hete, Rhodes, Steele, and ABX and DHL Enterprise

Plaintiff alleges that

Defendants [Hete, Rhodes, and Steele] entered into a conspiracy to carry out the aforesaid illegal immigrant hiring scheme. In furtherance of this scheme, these

individual defendants approved and implemented a policy within ABX and DHL to operate the illegal immigrant hiring scheme by using the corporate defendants, ABX and DHL, as a vehicle.  This scheme entailed a pattern of racketeering activity, detailed above.  These individual defendants agreed to enrich themselves by enriching DHL and ABX at the expense of the lawful hourly workers.  As such, the individual defendants and the corporate defendants DHL and ABX formed an association-in-fact RICO enterprise and they conducted the affairs of this enterprise through a pattern of racketeering activity and associated together for the common purpose of procuring unauthorized aliens to work at the Wilmington facility.

(Compl. ¶ 52.)  Plaintiff's decision to label this enterprise an association-in-fact enterprise is misleading, because the Court determines that Plaintiff has adequately alleged the existence of a "legal entity" enterprise controlled by various distinct persons, in this case Hete, Rhodes, and Steele. RICO prohibits "any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  An "enterprise" "includes any . . . corporation . . . or other legal entity . . . ."  18 U.S.C. § 1961(4).  As corporations, ABX and DHL are clearly "enterprises" for RICO purposes.  As ABX's President and CEO, Vice-President for Human Resources, and Human Resources Manager, respectively, Hete, Rhodes, and Steele are "persons" as defined by RICO that are distinct from the enterprise.  See 18 U.S.C. § 1961(3) ("'person' includes any individual or entity capable of holding a legal or beneficial interest in property").

The Supreme Court recognized the principle that a corporate employee is separate from the corporation and can conduct the corporation's affairs in violation of RICO in Cedric Kushner Promotions, Inc. v. King, 533 U.S. 158 (2001).  In that case, the plaintiff sued defendant King, the president and sole shareholder of Don King Productions, a corporation.  Id. at 160.  The Court noted that the "basic purpose [of incorporation] is to create a distinct legal entity," id. at 163, and that employees, as "persons" are distinct from the corporation, as an "enterprise," for RICO purposes.

28

RICO "protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or not) as a 'vehicle' through which unlawful[] activity is committed . . . . A corporate employee who conducts the corporation's affairs through an unlawful RICO pattern [] of activity . . . uses that corporation as a 'vehicle'" in violation of RICO. Id. at 164-65.

Plaintiff's allegations that Hete, Rhodes, and Steele "approved and implemented a policy within ABX and DHL to operate the illegal immigrant hiring scheme by using . . . ABX and DHL as [vehicles]" (Compl. ¶ 52) alleges that Hete, Rhodes, and Steele conducted ABX and DHL's affairs through a pattern of violating § 1324(a)(3) (hiring 10 or more unauthorized aliens). This allegation is supported by the fact that Hete (President and CEO), Rhodes (Vice-President for Human Resources), and Steele (Human Resources Manager) were all in positions to control ABX and DHL's hiring and employment affairs. This satisfies Reves's operation and management test, at least for the purposes of a motion to dismiss. Whatever difficulties Plaintiff may have in proving this allegation, he has alleged that Hete, Rhodes, and Steele conducted the affairs of an enterprise. See Trollinger I, 2007 WL 1574275 at *12 (Finding that plaintiffs' allegations that individual defendants controlled the corporate defendant's affairs were sufficient to plead individual defendants' conduct of an enterprise and citing to Cedric Kushner Promotions).

## IV.  Conclusion

Although Plaintiff's Complaint adequately pleads two or more racketeering acts (multiple instances of hiring ten or more unauthorized aliens) against all the Moving Defendants, Plaintiff's Complaint fails to state a claim against ABX and DHL because it does not adequately allege the existence of an association-in-fact enterprise between them and Garcia Labor. Additionally, Plaintiff's Complaint fails to allege that ABX and DHL conducted the affairs of this hypothetical

enterprise.  ABX and DHL's Motions to Dismiss (R. at 18, 20) are **GRANTED**.  Plaintiff's Complaint, however, does state a claim against Hete, Rhodes, and Steele because it adequately alleges that Hete, Rhodes, and Steele conducted the affairs of an enterprise through a pattern of racketeering activity.  Hete, Rhodes, and Steele's Motions to Dismiss (R. at 18, 19) are **DENIED**.

**IT IS SO ORDERED.**

Date: March 25, 2008                                      **/s/ John D. Holschuh**
                                                         John D. Holschuh, Judge
                                                         United States District Court